FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
SEAN RAYMOND BOZARTH (SBN 235019)
seanb@novianlaw.com
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, CA 90067
Telephone: (310) 553–1222
Facsimile: (310) 553–0222

Attorneys for GUILBERT TEX, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILBERT TEX, INC., a California Corporation, | Case No.: 2:20-cv-11420-SVW-AGR |
| Plaintiff, | **GUILBERT TEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DATTA HOLDINGS, LLC** |
| v. | |
| UNITED STATES FED GROUP CONSORTIUM SYNDICATE, a Delaware corporation; | |
| DATTA HOLDINGS, LLC, a Florida limited liability company; | Honorable Judge Stephen V. Wilson |
| VARUN DATTA, an individual; SAM SHARMA, an individual; | Date: November 29, 2021 |
| DAVID HUANG, an individual; | Time: 1:30 P.M. |
| ALEX ST. JAMES, an individual; and | Courtroom: 10A |
| DOES 1 through 10, inclusive, | |
| Defendants. | |

### I. INTRODUCTION

Plaintiff, Guilbert Tex, Inc. moves for partial summary judgment against Defendant, Datta Holdings, LLC ("Datta Holdings") on Plaintiff's Fifth Cause of Action for Account Stated. The undisputed facts will establish that authorized agents of Datta Holdings sent emails to agents of Plaintiff acknowledging that Datta Holdings owed Plaintiff exactly $258,750.00 and promising to pay it. This is

an Account Stated under California law and Datta Holdings' failure to pay entitles Plaintiff to a judgment of $258,750.00 plus interest against Datta Holdings.

## II.    STATEMENT OF FACTS

### A.  Background Facts Not Relied Upon by Motion

In August 2020, Plaintiff's agent, William "Bill" Needham ("Needham") met Defendant, David Huang ("Huang") while attempting to located protective masks. Huang indicated he was a "General Partner" of Defendant, United States FED Group Consortium Syndicate ("US FED"). Huang specifically stated, "US Fed Group is a trade consortium based in DC with long procurement history with all the major US manufacturers in major industries, including 3M, that's why we're able to get production allocation during this period;" and, "because US Fed Group only handles large orders (in the millions), I've set up a separate company, Datta Holdings, to purchase via US Fed for smaller buyers; it will be through this company that I will issue you the PO for the test order." Huang also stated, "I have one partner in [Varun] Datta, he made a lot of money in crypto so was willing to finance these deals."

Based upon Huang's representations, Plaintiff placed an order for 10,000 masks for a total cost of $22,500.00 on August 13, 2020. Huang purportedly signed the Order and Invoice as Managing Principal of Datta Holdings.[1] The Order and Invoice required an immediate payment of $11,000.00 payable by wire to Datta Holdings' Citibank account.

### B.  Undisputed Facts Relied Upon by Motion

Plaintiff wired $11,000.00 to Datta Holdings on August 14, 2020. Fact 10. When the masks were not delivered, Plaintiff came into contact with Defendant, Sam Sharma ("Sharma"), an agent of Datta Holdings. Fact 9. After speaking with Sharma, Plaintiff placed a second order with Datta Holdings for 125,000 3M Model 1860 masks at a price of $318,750.00 on September 25, 2020. Fact 11. That same day, Plaintiff wired $258,750.00 to US FED as payment toward Plaintiff's order with Datta Holdings. Fact 12.

---

[1] Datta Holdings maintains that Huang is not affiliated with Datta Holdings and had no authority to contract on behalf of Datta Holdings. Huang's relationship to Datta Holdings, however, is not material to this motion.

GUILBERT TEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DATTA HOLDINGS, LLC

When the second order of masks was not delivered, Plaintiff demanded Datta Holdings return $268,750.00[2] on October 6, 2020. Fact 13. On October 7, 2020, Sharma sent an email to Plaintiff's agents stating, "In the event they fail to deliver, then we are prepared to return the funds as we agreed to in the invoice agreement between Datta Holdings and Guilbert Tex." Fact 14. Thereafter, Datta Holdings returned Plaintiff's original payment of $11,000.00 by wire on October 8, 2020. Fact 15.

The following week, on October 13, 2020, Sharma sent an email to Plaintiff stating, "Datta Holdings will be refunding you the funds in the amount of 258,750. [¶] Prior to the refund, our legal counsel will prepare and present a hold harmless agreement which will need to be executed between Guilbert Tex and Datta Holdings. [¶] Upon execution, we will refund the monies and close our pending transaction." Fact 16. After another week, on October 22, 2020, Sharma sent Plaintiff a "Hold Harmless Agreement" which was signed a returned the same day by Plaintiff. Facts 17, 18. As late as October 27, 2020, Sharma stated in an email, "Please note, Datta Holdings recognizes that Guilbert Tex has 258,750 stuck within the US FED for which Datta Holdings is responsible for." Fact 19.

Datta Holdings never returned the $258,750.00 to Plaintiff. Fact 20.

## III.   AUTHORITY FOR MOTION

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the

---

[2] This amount was in error; the correct amount was $269,750.00. Needham Decl., ¶ 6.

GUILBERT TEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DATTA HOLDINGS, LLC

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

## IV. ELEMENTS OF THE ACCOUNT STATED COMMON COUNT

### A. Theory of Account Stated

"The theory upon which the action on an account stated is allowed is that transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same. The action is based on the promise to pay thus established, and if it is not expressly made, facts from which such promise will be implied must be proven. Originally, an account stated could exist only where the accounts were mutual, or where there was more than a single item, but in the course of time it became settled that there could be an account stated where but a single item was included or referred to therein. (136 Am. St. Rep. 42, note.)" *Bennett v. Potter*, 180 Cal. 736, 745 (1919).

"An account stated is an agreement, based on the prior transactions between the parties, that the items of the account are true and that the balance struck is due and owing from one party to another. (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 25 [69 Cal.Rptr. 568, 442 P.2d 648]; *Gardner v. Watson* (1915) 170 Cal. 570, 574 [150 P. 994].) When the account is assented to, ''it becomes a new contract. An action on it is not founded upon the original items, but upon the balance agreed to by the parties.' **Inquiry may not be had into those matters at all.** It is upon the new contract by and under which the parties have adjusted their differences and reached an agreement." (*Gardner v. Watson*, *supra*.)" *Gleason v. Klamer*, 103 Cal.App.3d 782, 786 (1980) (emphasis added).

### B. Elements of the Cause of Action

"The essential elements of an account stated are: (1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied,

4

GUILBERT TEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DATTA HOLDINGS, LLC

to pay the amount due. (*Bennett v. Potter*, 180 Cal. 736, 745, 183 P. 156; *Hansen v. Fresno Jersey Farms Dairy Co.*, 220 Cal. 402, 408, 31 P.2d 359; 1 Cal.Jur.2d Accounts and Accounting, s 43, p. 317.)" *Zinn v. Fred R. Bright Co.*, 76 Cal.App.2d 597, 600 (1969). "An account stated need not be submitted by the creditor to the debtor. A statement expressing the debtor's assent and acknowledging the agreed amount of the debt to the creditor equally establishes an account stated. (*Levy v. Prinzmetal* (1955) 134 Cal.App.2d Supp. 919 [286 P.2d 1023]; *Zinn v. Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 600 [76 Cal.Rptr. 663, 46 A.L.R.3d 1317].)" *Truestone, Inc. v. Simi West Industrial Park II*, 163 Cal.App.3d 715, 726 (1984).

## V.   AN ACCOUNT STATED EXISTS BETWEEN THE PARTIES

### A.  Previous Financial Transactions

This Honorable Court should first turn to the horse's mouth wherein Sharma stated, ". . . [W]e will refund the monies and close our pending transaction." Fact 16. This alone should be sufficient to establish that Plaintiff and Datta Holdings were engaged in financial transactions. In addition, it is undisputed that Plaintiff wired $11,000.00 to Datta Holdings, which was later returned by wire. Facts 10, 15.

The present indebtedness arose from a second order with Datta Holdings for 125,000 3M Model 1860 masks for which Plaintiff wired $258,750.00 to US FED as payment toward Plaintiff's order with Datta Holdings. Facts 11, 12. Datta Holdings now maintains it is not responsible for refunding this amount; a point upon which the parties disagree. However, it is precisely that disagreement which an account stated is meant to supersede. ". . . [I]t is well settled that the compromise of a claim or demand, even of a claim or demand of doubtful validity or value, is a good consideration for an account stated, and the defendant will not be heard to answer when action is brought upon the account stated that the claim or demand was unjust, or invalid." *Gardner v. Watson*, 170 Cal. 570, 575 (1915).[3]

---

[3] "The matter may be summed up in the apt language of Lord Hardwicke, in *Stapelton v. Stapelton*, 1 Atkyns, 12, [26 Eng. Reprint, 1]: 'An agreement entered into upon a supposition of a right, or of a doubtful right, though it after comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on the one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement.'" *Gardner*, 170 Cal. at 575.

GUILBERT TEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DATTA HOLDINGS, LLC

### B. Datta Holdings Agreed That It Owed Plaintiff $258,750.00 in Writing

On October 6, 2020, Plaintiff demanded Datta Holdings return $268,750.00. Fact 13. Datta Holdings returned $11,000.00 to Plaintiff on October 8, 2020. Then, on October 13, 2020, Sharma stated to Plaintiff, "Datta Holdings will be refunding you the funds in the amount of 258,750." Fact 16. As recently as October 27, 2020, Datta Holdings admitted that it, ". . . recognizes that [Plaintiff] has 258,750 stuck within the US FED for which Datta Holdings is responsible for." Fact 19. Datta Holdings consistently agreed with Plaintiff that it owed Plaintiff $258,750.00.

### C. Datta Holdings Promised to Pay Plaintiff the $258,750.00 in Writing

On October 13, 2020, Sharma sent an email to Plaintiff on behalf of Datta Holdings stating, "Datta Holdings will be refunding you the funds in the amount of 258,750." Fact 16. This is an unequivocal promise to pay. Sharma did demand a "Hold Harmless Agreement," which Plaintiff signed. Facts 17, 18.

## VI. PRE-JUDGMENT INTEREST IS RECOVERABLE PER CALIFORNIA CODE OF CIVIL PROCEDURE § 3289

"If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Code of Civ. Proc. § 3289(b).

## VII. CONCLUSION

Plaintiff and Datta Holdings established an account stated that Datta Holdings promised to pay. Ultimately, Datta Holdings did not pay the agreed-upon amount. Fact 20. Therefore, Plaintiff is entitled

///

///

///

///

///

///

GUILBERT TEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DATTA HOLDINGS, LLC

to partial summary judgment on its Fifth Cause of Action for Account Stated in the amount of $258,750.00 plus interest at the rate of ten percent (10%) per annum from at least October 22, 2020.


DATED: November 3, 2021                                    **NOVIAN & NOVIAN, LLP**
                                                           Attorneys at Law


                                          By:     */s/ Sean Raymond Bozarth*
                                                  FARHAD NOVIAN
                                                  SEAN RAYMOND BOZARTH

                                                  Attorneys for GUILBERT TEX, INC.

GUILBERT TEX'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DATTA HOLDINGS, LLC